Okay, I think we're about ready. Let's call our next case 20-4026, Peterson v. Raymond Corporation. Mr. Warhower, you may proceed. May it please the court. My name is Michael Warshower. I represent the appellants, plaintiffs below. Before I forget, if I have any time left over, I'd like to reserve it for rebuttal. If the district court had used the correct Darbert analysis in its consideration of expert Tom Berry's testimony, it would have allowed all of his opinions and denied some re-judgment. Indeed, in recent years, Mr. Berry has had every one of his opinions about the need to have doors included the standard equipment on stand-up forklifts admitted in state and federal courts. The district court noted, and I quote, the man has clearly made himself an expert in this area of law. So given the quality of his report and his testimony at the Darbert hearing, one must wonder why did the district court exclude Tom Berry in this case? The answer is, as the district court tells us, and I quote, at bottom, I think the case ends up turning on a legal question. And in my judgment, a narrow and simple one, close quote. That legal question is whether or not a plaintiff's design expert in a Utah product liability case has to choose one and only one alternative design for his opinion to be sufficiently reliable to be admissible. Counsel, I hate to break your train of thought, but if it was that simple, why did it take, what, 30 months to get a ruling out of the district court in regards to this matter? With all due respect to the district court, in the first three pages of the district court's oral argument, oral opinion, he says over and over, it mismanaged this file. And that is evidenced by this finding that I'm going to talk a little more about now. Thank you, Counsel. The district court answered this question by erroneously deciding that the plaintiff had to choose one and only one alternative design. This error merged the concept of what the plaintiff must prove with the determination of the admission of the expert's opinions governed by Rule 702. This error resulted in the district court finding that expert Barry's opinions were unreliable because in its view, they were uncertain. Did the expert actually submit multiple designs that it proffered to the district court? Your Honor, it did. Really, there's one design, a door. He submitted multiple iterations of how the need for a door could be satisfied. I noted that Judge Carson, in the first argument this morning, had referred to photographs in the briefs. If the court would look at both our original brief and our reply brief, you will see actual photos of doors that are in use in the real world that were discussed by Mr. Barry as satisfying the need for a reasonable alternative design. All you had to do is show a door and we're done with Daubert? No, sir. Not at all. He did more than that. He showed the door. He showed how the door would fit. He showed how doors, in general, have been used successfully in the real world, including the Raymond door, which is a spring-loaded door that has not had an accident involving this particular crush injury, so it successfully worked in the real world. He talked about how doors on substantially similar side stands, stand-up forklifts, had also had success for other users and like warehouses. We quote all of this in our reply brief in a succinct fashion where we show his testimony in the Daubert hearing, but more importantly, Judge Simcovich, he does talk about each of the doors. He talks about how they're successful use. Did he ever put a door on a Raymond forklift? He shows a picture of himself. Raymond actually makes a door and he discussed that that door, which is an option, would have satisfied, not his first choice, but it would have satisfied the need for a reasonable alternative design that would have reduced the risk, and he talks about how that door, when used in the marketplace, has successfully protected people from the kind of injuries suffered here, but Judge Simcovich, we lose sight here. What do we do about that? You know, Raymond has a door option and an open option. Clearly, they foresee different situations where the machine is being used that have different safety considerations. Does the expert have to design a forklift that, you know, has a permanent door, which may make it unsafe in other applications, as I understand the record? Is that a fact question? That is absolutely a fact question. What Mr. Berry said is that doors are better in the general picture. They make the forklift overall safer. The defendant says doors make the forklift overall less safe. It will be for the jury to decide which is which. Now, what I'm concerned about, Judge Simcovich, is that we've gone down a rabbit hole that wasn't the rabbit hole the trial judge went down. Instead, the district decided that we had to choose one door simply stopped the process of the Daubert analysis. If you don't do the Daubert analysis correctly, that's an error of law that demands reversal. So we know that, and I don't think there's any question, and I can skip this part if the court agrees with me, but it is simply not the law in Utah or any jurisdiction in the United States that requires an alternative design that a plaintiff choose one and only choice. Counsel, let me ask you that. If we agree with you that that is the law, and I'm just speaking for myself, assuming that we might agree with your proposition there, you still could lose this on because if indeed the law allows multiple doors, multiple options, multiple alternative designs, then what we would find from the record in this case is that the judge didn't apply the law correctly. We know this. First, let me answer the question to tell you why we know it's not the law. We know it's not the law for four reasons. The first reason is Utah product liability law, which was created in the Hahn v. Armco case in 1972, subsequently recognized by this case in the Wankhier v. Crown and Allen v. Minster cases, is a body of law that incorporates the restatement. The restatement talks about multiple options being multiple alternative designs. We quote in our briefs an excellent discussion involving toy guns that shoot a the alternative design could be a squirt gun or a ping pong ball gun or a soft pellet gun. The second reason we know is that numerous cases around the country that follow the restatement that require an alternative design regularly recognize multiple designs. Again, we have one design with multiple iterations, but some of the cases that are recognized at the United States um alternative designs. So if we give you that, excuse me your honor, if we if we give you that that you can present multiple designs then that gets us into the abuse of discretion review doesn't it on whether the district court's other findings then supported the um exclusion of your evidence. I mean your de novo argument is based on this idea that the district court said you couldn't have multiple designs you view that as a question of law right? That is a question of law. Okay so the district court's analysis as to whether your expert can comply with the requirements of Daubert those are reviewed for an abuse of discretion you review you agree with that don't you? I would agree that a properly conducted Daubert analysis based on the right rules of law is a abuse of discretion review. However, if the analysis as in the gatekeeping role was conducted under a false assumption that there is a law requiring a certain conduct by the expert that was not indeed required that is an abuse of discretion as a matter of law. Well it looks to me like we have a district judge here in a lengthy 151 page transcript making alternative findings such as when he he says instead Barry has identified multiple supposed alternative designs but is not clearly committed to any of them and then he but then he says and in any event he has not done the requisite analysis and testing required for any proposed alternative design that would render his proffered expert opinion admissible. Then he says Barry's suggestion of a door falls short in my judgment of providing a scientifically reliable reliably engineered design alternative particularly when considering the complexity of the subject forklift machine Barry opines on. He has not in my judgment undertaken the expert engineering work and he goes on he makes several well five or six statements like this in the transcript and that suggests more of a of a traditional Daubert analysis than then and it takes us away from your legal position about the multiple designs. Judge Carson there are two responses to that. First the judge makes very clear when he says things like at appendix 1918 Barry's failure to actually identify any door at his proposed design leads the court to conclude on that fact alone when the court says on that fact alone I think it's fair that we trust the court that on that fact alone the failure to do what the court thought was required by Utah law that is the reason he was excluded. Okay well let me joust with you a little bit on that because then he also says I find for all those reasons that Barry does not offer a scientifically reliable expert opinion and propose say for alternative design for Raymond model 4200 forklift and for those reasons that opinion is excluded. So I mean he's there's apparent conflict within the opinion sometimes he says it has to do with his scientific analysis and sometimes he says it has to do with the fact that he's not committed to a design. The overall import the overall reading that you see over and over and over when you read things like what you just quoted me judge if you read the two paragraphs before the frustration continually is his belief that Mr. Barry and the plaintiffs refused. If you've been in the hearings he was angry at me because I insisted that was not the law. That is infused throughout. Additionally your honor we cannot overlook the fact that he engrafted the concept of the basic rules of fairness into his Darbert analysis. That's simply not in 702. It's not in the Darbert line of cases but I also would point out that if indeed your honor he somehow just talked about over and over and over the need to comply with this incorrect Utah law as dicta then what we would find is that what he did is simply an abuse of discretion. Mr. Barry's rule 26 report and his Darbert testimony are models of what an expert can do and should do under 702. He provided expertise for himself. He provided proof of the performance of the alternative design in the real world. Not hypothetical. Often we will see someone who says I've got a better design. It's not being used yet but it's better. He said I've got a better design. This company has used it. This company when it exact same kind of injury that's the science that supported it and the court ignored it. If we look at the Darbert hearing in 1484 have you designed and tested the doors and he talks about each and every door how he designed and tested it and then if the court had looked he said well you didn't show me the test. It's in the appendix. It would be as we point out in our our uh brief it's much like a orthopedic surgeon uh got a broken bone yeah I saw the x-rays well what x-ray machine was it well I can get that for you and Mr. Barry has it listed all of the science he relied on is listed all of the studies he relied on are listed his personal tests are described so if the court indeed had followed the right rules which it patently did not it would nevertheless be an indecisive discretion and it would have admitted his opinions and denied some injunctment I'll reserve my time thank you council um let's hear from Raymond Mr. Lacoco forgot to do that thank you your honors uh good morning or afternoon here I guess may please the the issues presented in this appeal are straightforward and the judgment of the trial court should be affirmed um I had intended to start by discussing this issue that doesn't exist in Judge Shelby's Chief Judge Shelby's uh decision which is that there's this uh error of law plaintiff uh appellant proposes that Judge Shelby committed an error by holding that Mr. Barry should be precluded from testifying because Mr. Barry offered more than one safer alternative design the trial court made no such holding the trial court made no such statement the trial court made no such error of law um Judge Carson pointed out just some of the the places where the problem that Judge Shelby had was not the number of proposed alternative designs it was the lack of intellectual and engineering rigor put forward regarding those potential say a quote unquote safer alternative designs one other one you agree that if he if he had if his opinion was that he couldn't testify because he had multiple designs and wouldn't agree to just one that that was uh legally erroneous um I know that calls for a yes or no your honor and I'm gonna say I don't know and the reason why I say I don't know is because we reject the premise of the statement provided by the appellant here we don't think that's what happened I mean he said it I mean it was really clear in his and his ruling in a number of places that that's what he said no well I think your honor what he said was that the plaintiffs uh the plaintiff's expert putative expert Mr. Barry didn't do the work for any of these designs and to get to the jury uh he would have to do what's required under Dawbert and Kumo Tire for at least one of these designs he never said you can't testify because you have more than one design counsel let me just uh just in fairness to you I read this similar to what Judge Carson is saying it it appeared to me that the trial court clearly says that under Utah law you can't argue alternate theories you gotta choose one and go forward with that now is that your understanding generally of the law anywhere that you can't plead alternative theories no your honor that isn't that's not my understanding and I I don't believe that's what Judge Shelby was saying I think Judge Shelby was saying that if you have more than one proposed alternative design you still have to do the uh engineering work design testing that's why for example and Judge Shelby discussed this in the cross-examination of Mr. Barry he admitted during cross-examination that there are steps in the engineering process and except for the concept he did not apply those steps prototyping field testing uh with regard to any of these proposed designs I do though your honor Judge Baldock want to pick up on a question that you asked Mr. Warshower early in his argument and that is what difference does it make and my long time ago now but my undergraduate degree is in philosophy so if you play out the logic Judge Shelby either made this error or he didn't make the error if he didn't make the error then we look at his analysis under abuse of discretion which I'm going to talk about in a that Judge Shelby didn't properly exercise his discretion he did not abuse his discretion so the other half of the of the logic stream let's say he committed this error of law that he focused too much on you could only you you have to have one design or you can't have more than one design all that means then is an instruction to okay now consider all the other designs all Mr. Warshower wants considered we end up at the same place and that gets back to what Judge Carson was reading from the record another place at 1919 of of the appellate record volume eight Judge Shelby says quote at best as Peterson's counsel repeatedly urges and as testimony of the Daubert hearing revealed he has quote considered end quote these alternatives and that each would have prevented Peterson specific injury but merely stating he has considered various designs and how they might have guarded against Peterson specific type of collision hazard falls far short of any engineering rigor among other things Barry fails to say how he considers them fails to identify any scientific or technical analysis he applied to each or any of them and offers no scientific support for his naked conclusion that each or any of them is safer than the Raymond design with regard to the so we end up at the same place with regard to the issue of the abuse of discretion Judge Shelby did not this court's jurisprudence is quite clear that under an abuse of discretion standard related to experts there has to be something really awful in what the trial court judge did if we look what test needed to be performed really I mean we're all we're talking about a door you know there's four or five different kind of doors you could put on a forklift Raymond itself has a door option for its customers so there's there's really no question that the attaching a door to the machine is feasible and the real question is whether the that particular design would be safer and why why wouldn't that ultimately be a question of fact for the jury here well because before you can because under the Daubert analysis Judge Shelby the trial judge has to be the gatekeeper for whether the proposed expert has come up with a safer design a safer alternative design and it's not just a matter of feasible and the law doesn't say a feasible alternative design it says safer what's in the record is that the door that Raymond makes is a spring-loaded non-latching door that's intended for very specific environments of use where you have where you have potential hazards from intrusion pipes bar stock plumbing supply house lumber yard and it's intended for those very specific environments of use it is not intended to keep people in it is intended to keep things out I believe in the record we established that very few of the those are are are sold and so the testing isn't does it fit on and and how does it work what's what's the testing that Mr. Berry should have done well he should have and this comes right out of the decision as well he should have first and foremost taken a model 4200 and at least outfitted it with his or many version whatever his versions of the design are put it out in the field to get some feedback from users to see how it is used what's in the record your honors is that putting this door on and and this is makes the truck much more dangerous and we cited cases where other courts of appeal around the country have so found we cited Hernandez versus Crown it's a precarium decision from the 11th circuit where this issue was was raised and and and discarded there are other cases where experts have been precluded from testifying and the fact of the the trial court judge here who's tasked with reviewing this evidence for admissibility under an abuse of discretion standard found that the the work by Mr. Berry did not meet the requirements of rule 702 and Daubert and as I was saying earlier if you look at Gable versus Denver and Rio Grande Western Railroad Company which is at 346 F third 987 that this says with regard to abuse of discretion we will not disturb the district court's ruling unless it is arbitrary capricious whimsical or manifestly unreasonable or when we are convinced that the district court made a clear error of judgment or exceeded the bounds of permissible choice in the circumstances citing Dodge at 328 F third at 1223 so it's a pretty high standard to find that Judge Shelby abused his discretion particularly here your honors where Judge Shelby reviewed thousands of pages of briefing and attachments he held an in-person oral argument he then held a Daubert hearing with Mr. Berry on the stand and he allowed Mr. Warshower and Mr. Berry all the time they needed to present his opinions and methodology in fact and this is in the in the briefing I was not even permitted to offer evidentiary objections to many of the items to which Mr. Berry was referring which which were numerous Judge Shelby then sought additional extensive post-hearing briefs he held another lengthy oral argument he then as Judge Baldock pointed out took months to make a decision and provided ultimately an over two hour explanation of his analysis and the basis for his decision with detailed references to the record and to the law he could not have done so without having carefully reviewed the extensive record before him uh your honor the your honors in the past couple of decades since Daubert was decided I've been a part of many Daubert uh processes never won this thorough and extensive um Judge Shelby told the parties early on when he took the case over before our first trial day before any of these motions had been had been filed that he saw his job as being a servant to the parties and that's what he did here I guess uh someone one or all of you might want to disagree with Judge Shelby's ultimate decision but there's no way he abused his discretion and as I mentioned earlier your role here is to determine whether Judge Shelby abused his discretion he did not many of the questions that Mr. Warshower many of the comments Mr. Warshower was getting into puts you in the role of performing the Daubert analysis that was already performed by Judge Shelby and that's not the role of the 10th circuit or any appellate court in this circumstance um your honor the trial court's judgment should be affirmed Mr. Peterson's appeal should be dismissed and unless you have any additional questions I appreciate uh your time this morning thank you counsel we'll take back the time and if you could give um Mr. Warshower one minute thank you judge let me point out a couple of things quickly in the Hernandez case the trial judge admitted every single one of the opinions offered by Mr. Berry so if we're going to use that as guidance let's use the right ruling which the trial judge ruling a gatekeeper is not a fact finder a gatekeeper is not to weigh the facts or find facts to determine admissibility the gatekeeper is to follow a process that process required him to do certain steps here he admits the trial court writes he didn't follow the right steps he started off applying the wrong law and that blinded him and he's he states at 1918 he was loathe to engage in this exercise of attempting to evaluate the support for doors berry has identified where the court cannot discern that he is committed to any one of them the fact of the matter is it just stopped doing the work after it became so frustrated because of an error of law and that is why we are here today an error of law that poisoned everything thank you for your time we appreciate your arguments your uh pulse your time has expired now and we'll your excuse we'll submit the case